**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION**

**RON LOPEZ and CHRISTIE LOPEZ**　　　　　　　　　　　**PLAINTIFFS**

**VS.**　　　　　　　　　　**CIVIL ACTION NO. 4:10CV55TSL-LRA**

**ARTHUR L. STURDIVANT; SHELTER
INSURANCE COMPANY; and DOE
DEFENDANTS, INDIVIDUALS and
CORPORATIONS 1-10**　　　　　　　　　　　　　**DEFENDANTS**

**MEMORANDUM BRIEF IN SUPPORT OF SHELTER'S
MOTION FOR SUMMARY JUDGMENT ON COVERAGE ISSUES**

Defendant Shelter Mutual Insurance Company (incorrectly sued as "Shelter Insurance Company") moves the Court for summary judgment on insurance coverage issues pursuant to Rule 56 of the Federal Rules of Civil Procedure.  It now submits this supporting memorandum brief.

**I.  COURSE OF PROCEEDINGS AND UNDISPUTED FACTS.**

Shelter Mutual Insurance Company requests the Court grant it summary judgment in this insurance coverage dispute.  The homeowners' policy Shelter issued the Lopezes affords no coverage for the injuries and damages the Lopezes claim as a result of a contractor's use of allegedly defective Chinese-manufactured drywall in the construction of their home.

Some time prior to December 21, 2007, Ron and Christie Lopez entered into a contract with Arthur L. Sturdivant to purchase a newly constructed home he had built that year at 92 Oak Lane in Waynesboro, Mississippi.[1]

---

[1]See Complaint (pp. 5-17 of Attachment 1 to Notice of Removal, Court Document No. 1).

On or about December 10, 2007, in anticipation of closing on the house he and his wife were purchasing from Sturdivant, Ron Lopez purchased a homeowners' insurance policy (hereinafter "the policy") from Shelter Mutual Insurance Company through the Chuck May Agency in Laurel, Mississippi.[2]

Later, on December 21, 2007, the Lopezes and Sturdivant closed on the home.[3]  The Lopezes delivered the required funds to Sturdivant and took possession of the home.[4]

The Lopezes noticed unexplained noxious odors, damage to appliances, and damage to exposed metals in the house at some unspecified time in 2009.[5]  They also allege they began experiencing adverse health effects at that time which required them and their two minor children to move out of the home and into a garage on their property.[6]

At some unspecified time, the Lopezes learned that the newly constructed home which

---

[2] See copy of policy, Exhibit "A" to Motion For Summary Judgement on Coverage Issues; see also Complaint (pp. 5-17 of Attachment 1 to Notice of Removal, Court Document No. 1) at ¶ 11.  Note that the Complaint incorrectly alleges that Shelter's policy took effect on December 7, 2007.  See Complaint (pp. 5-17 of Attachment 1 to Notice of Removal, Court Document No. 1) at ¶ 11.  As evidenced by the Policy Declarations, Shelter's policy did not actually take effect until December 10, 2007.  See policy, Exhibit "A" at Policy Declarations (B-223 13-B). However, this small discrepancy is immaterial for summary judgment purposes.

[3] See Complaint (pp. 5-17 of Attachment 1 to Notice of Removal, Court Document No. 1) at ¶ 8.

[4] See Complaint (pp. 5-17 of Attachment 1 to Notice of Removal, Court Document No. 1) at ¶ 8.

[5] See Complaint (pp. 5-17 of Attachment 1 to Notice of Removal, Court Document No. 1) at ¶ 9.

[6] See Complaint (pp. 5-17 of Attachment 1 to Notice of Removal, Court Document No. 1) at ¶¶ 9 and 10.

2

they had purchased from Sturdivant had been constructed with Chinese manufactured drywall.[7]

They claim that the drywall was defective and that the defective drywall was the cause of the

problems in the home and the adverse health effects they had begun to experience.[8]

On February 26, 2010, the Lopezes sued Sturdivant and Shelter in the Chancery Court of

Wayne County, Mississippi.[9]  In their suit, the Lopezes essentially claim that Sturdivant used

defective Chinese-manufactured drywall in the construction of the home he sold them.[10]  They

claim Shelter failed to appropriately, adequately, and timely investigate and/or adjust the

resulting insurance claim.[11]

Shelter removed this lawsuit to this Court on April 7, 2010.[12]  A week later, it answered

the Lopezes Complaint, denying its substantive allegations and raising a number of affirmative

---

[7]See Complaint (pp. 5-17 of Attachment 1 to Notice of Removal, Court Document No. 1) at ¶ 9.

[8]See Complaint (pp. 5-17 of Attachment 1 to Notice of Removal, Court Document No. 1) at ¶ 9.

[9]See Complaint (pp. 5-17 of Attachment 1 to Notice of Removal, Court Document No. 1).

[10]See Complaint (pp. 5-17 of Attachment 1 to Notice of Removal, Court Document No. 1) at ¶¶ 9, 17, 19, 23, 33.

[11]See Complaint (pp. 5-17 of Attachment 1 to Notice of Removal, Court Document No. 1) at ¶¶ 12, 28, 29, 47, 61. The Lopezes claim that, after learning that their home had been constructed with defective Chinese-manufactured, drywall, they submitted an insurance claim to Shelter under their homeowners' policy.  See Complaint (pp. 5-17 of Attachment 1 to Notice of Removal, Court Document No. 1) at ¶ 12.  Shelter, however, denies that the Lopezes submitted an insurance claim and asserts that the Lopezes' lawsuit was its first notice of a claim.  See Separate Answer and Affirmative Defenses of Shelter [hereinafter "Shelter's Answer"], Court Document No. 4, at  ¶¶ 12, 28, 29, 47, 61 and at Affirmative Defense No. 5.  In either event, whether the Lopezes submitted a claim to Shelter prior to filing suit against Shelter is immaterial for summary judgment purposes.

[12]See Notice of Removal, Court Document No. 1.

defenses.[13]

The Lopezes moved the Court to remand their suit back to state court.[14]  Shelter opposed the Lopoezes' Motion to Remand and, simultaneously, moved the Court to sever the claims the Lopezes filed against it from the distinct, litigable claims they brought against Sturdivant.[15]

Ultimately, on August 6, 2010, this Court entered its Memorandum Opinion and Order.[16]  Therein, this Court granted Shelter's Motion to Sever and the Lopezes' Motion to Remand as to the claims they had brought against Sturdivant.[17]  It denied the Lopezes' Motion to Remand as to the claims they had brought against Shelter, retained jurisdiction of the claims they had brought against Shelter, and entered its Scheduling Order.[18]  Pursuant to the Court's Scheduling Order, Shelter has until November 5, 2010 in which to file its dispositive motion on the pending coverage issues.[19]  The Lopezes have until November 29, 2010 in which to notify the Court of any need for discovery and until  December 17, 2010 in which to respond to Shelter's dispositive motion.[20]

---

[13]See Shelter's Answer, Court Document No. 4.

[14]See Motion to Remand and supporting memorandum brief, Court Document Nos. 7 and 8.

[15]See Shelter's Response in Opposition to Motion to Remand, Shelter's supporting memorandum brief, and Shelter's Motion to Sever, Court Document Nos. 11, 12, and 13.

[16]See Memorandum Opinion and Order, Court Document No. 22.

[17]See Memorandum Opinion and Order, Court Document No. 22.

[18]See Memorandum Opinion and Order and Scheduling Order, Court Document Nos. 22 and 24.

[19]See Scheduling Order, Court Document No. 24.

[20]See Scheduling Order, Court Document No. 24.

Today, Shelter is moving the Court for summary judgment on insurance coverage issues. There are no genuine issues of material fact, and Shelter calls upon the Court to interpret provisions in the insurance policy it issued the Lopezes under the legal guidelines set forth by controlling Mississippi law.[21]  Moreover, and as demonstrated in Shelter's Motion for Summary Judgment on Coverage Issues and in this supporting memorandum brief, Shelter is entitled to judgment as a matter of law.  The homeowners' policy Shelter issued the Lopezes simply affords no coverage for the injuries and damages the Lopezes claim as a result of Sturdivant's use of allegedly defective Chinese-manufactured drywall in the construction of their home. Additionally, two separate policy exclusions specifically and explicitly exclude coverage for the injuries and damages the Lopezes claim.  Accordingly, Shelter is entitled summary judgment, declaring that its policy affords no coverage for the Lopezes' claims.

## II.  PERTINENT POLICY PROVISIONS.

Shelter Homeowners' Policy Number 23-71-6187266-1, issued to Ron T. Lopez on December 10, 2007 contains the following provisions pertinent to Shelter's Motion for Summary Judgment on Coverage issues and this supporting memorandum brief:

### HOMEOWNERS' INSURANCE POLICY
### SPECIAL COVERAGE FORM 3
### AGREEMENT

**We** agree to insure **you** according to all the terms of this policy.

---

[21]The interpretation of an insurance policy is an issue of law.  Edwards v. Brambles Equipment Services, Inc., 2003 WL 22135642 (5th Cir. Sept. 16, 2003) at p.2; (interpretation of insurance policy provisions are issues of law); Performance Autoplex II Ltd. v. Mid-Continent Casualty Co., 322 F.3d 847, 853 (5th Cir. 2003) (same) (citing American States Ins. Co. v. Bailey, 133 F.3d 33, 369 (5th Cir. 1998); Thomas v. State Farm Fire and Casualty Co., 2003 WL 21448878  (Miss. App. June 24, 2003) (same); Johnson v. Preferred Risk Auto. Ins. Co., 659 So. 2d 866, 871 (Miss. 1995) (same).

. . .

## DEFINITIONS USED THROUGHOUT THIS POLICY

In this policy, the words shown in bold type have the meaning stated below unless a different meaning is stated in a particular coverage or endorsement. . . .

1.  **Accident** means an action or occurrence, or a series of actions or occurrences, that:
    (a) started abruptly,
    (b) during the policy period; and
    (c) directly resulted in **bodily injury** or **property damage**.

    . . .

    **Accident** does not mean:
    (a) an action or occurrence that any **insured** intended to result in **bodily injury**, or **property damage**, of any type:
    (b) an action or occurrence that is intended by any **insured**, if a reasonable **individual** would expect it to result in **bodily injury**, or **property damage**, of any type; or
    (c) an intentional action by any **person** that does not immediately result in **bodily injury** or **property damage**, but ultimately does result in such because of its repetition or the repetition of similar actions.

2.  **Accidental direct physical loss** means loss of possession of, or actual physical damage to, a part of the covered property which is caused by an **accident**.  It does not include:
    (a) consequential economic damage resulting from such physical damage to that part or to the covered property as a whole,
    (b) consequential economic damage resulting from the inability to restore full monetary value to that part or to the covered property as a whole because of the fact that it has sustained physical damage;
    (c) consequential economic damage resulting from the loss of use of that part or the covered property as a whole,
    (d) consequential economic damage resulting from the inability to match the parts which are **repaired** or **replaced** with undamaged adjacent parts, or
    (e) any diminution of the pre-loss value of the covered property after the **repair** or **replacement** of its parts.

. . .

4.  **Bodily injury** means:
    (a) a physical injury;
    (b) a sickness or disease of the body;
    (c) the physical pain and physical suffering which directly results from (a) or (b), above; and
    (d) a death which directly results from (a) or (b), above.
    **Bodily injury** does not mean:

(a) a mental injury;
(b) a sickness or disease of the mind;
(c) mental anguish; or
(d) emotional distress;
unless such mental or emotional condition is diagnosed by a medical doctor and directly results from **bodily injury** to the **individual** on whose behalf the **claim** is made.

. . .

14.    **Dwell** means to live in a location with, or without, the intent to make that place one's **residence**.

15.    **Dwelling** means the structure in which one **dwells**.

. . .

32.    **Premises** means real estate.  It includes land and any improvements permanently attached to the land.  For purposes of this policy, all real estate conveyed by one deed granting title to that land will be considered the same **premises**.  Lands conveyed by separate deeds will be considered separate **premises**.

33.    **Property damage** means physical injury to or destruction of tangible property and includes damages for the loss of its use.

. . .

43.    **Residence premises** means:
(a) any one or two family **dwelling** situated on the **premises** described in the **Declarations** if:
    (1) **you own** that **dwelling**; and
    (2) **you** presently **reside** in that **dwelling**, have **resided** there in the last thirty days; or will **reside** there within thirty days of the inception date of this policy; or
(b) a one or two family **dwelling** referred to in the **Declarations** as the "secondary residence premises", if **you own** that **dwelling** at the time of a loss.
That **dwelling**, the grounds, and other structures at the same **premises**, are included in this definition.

. . .

49.    **We, us** and **our** mean the Company providing this insurance.

50.    **You** means any **person** listed as a **named insured** in the **Declarations** and, if that **person** is an **individual**, this or her spouse.

. . .

## SECTION I - PROPERTY PROTECTION

**COVERAGE A - DWELLING**
INSURING AGREEMENTS
1.    **We** cover **accidental direct physical loss** to the following property, except for those perils and losses excluded under the heading "Exclusions Applicable to Coverages A &

B".
(a) **Your dwelling** including building structures attached to it, at the **residence premises**, but only if that **dwelling** is used principally as a private **residence**.  If a building structure is connected to the **dwelling** by only a utility line or fence, it will not be considered attached to the **dwelling** for purposes of coverage.

. . .

EXCLUSIONS APPLICABLE TO COVERAGES A & B.
**We** do not cover any loss or damage if it would not have occurred in the absence of any event or condition listed below.  That loss or damage is excluded from coverage regardless of:
 (a) the proximate cause of that event or condition;
 (b) the fact that other events or conditions which are not excluded, caused the loss or damage;
 (c) the fact that other events or conditions, which are not excluded, contributed to the loss or damage;
 (d) the sequence of the events or conditions that caused the loss or damage;
 (e) whether the events and conditions that caused the loss or damage occurred suddenly or gradually;
 (f) whether the loss or damage is isolated or widespread; or
 (g) whether the loss or damage arises from natural forces, external forces, or a combination of such forces.

. . .

10. . . . latent defect . . . .

. . .

19. Any defect, inadequacy, fault, unsoundness or weakness in:
 (a) material used in construction or repair;

. . .


## III.  ARGUMENTS AND AUTHORITIES.

## A.  STANDARDS FOR IMPOSITION OF SUMMARY JUDGMENT.

Summary judgment should be granted if there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); <u>Celotex Corp. v. Catrett</u>, 477 U. S. 317, 322 (1986).  "[T]he plain language of Rule 56(c) mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the

burden of proof at trial." <u>Celotex</u>, 477 U. S. 317, 322.  Importantly, under the provisions of Rule 56(e) of the Federal Rules of Civil Procedure, a party against whom a motion for summary judgment is brought may not merely rest upon his pleadings but, rather, must, by affidavit or as otherwise provided by Rule 56, inform the court of specific facts demonstrating that there is a genuine issue for trial.  <u>Celotex</u>, 477 U. S. at 324.

In this case, there is no genuine issue of material fact.  Rather, it is clear, as set forth below, that the policy of insurance which Shelter issued to the Lopezes simply does not afford coverage for any of the claims allegedly resulting from Sturdivant's use of Chinese-manufactured drywall in the home he constructed and sold to the Lopezes.  In fact, the policy specifically and explicitly excludes all claims.

## B.  COVERAGE A HAS NOT BEEN INVOKED.

First and foremost, the policy Shelter issued the Lopezes only affords property protection for "accidental direct physical loss" to their home.[22]  It is the Lopezes' burden to prove "accidental direct physical loss" to their home.  <u>See</u> <u>Corban v. United Services Auto. Ass'n</u>, 20 So. 3d 601, ¶¶ 50-51 (Miss. 2009) (insureds must prove accidental direct physical loss to their property); <u>Lunday v. Lititz Mut. Ins. Co.</u>, 276 So. 2d 696, 699 (Miss. 1973) (insured was required to prove damages sustained were covered by peril insured against); <u>see</u> <u>also</u> <u>Leonard v. Nationwide Mut. Ins. Co.</u>, 438 F. Supp. 684, 694 (S. D. Miss. 2006) (applying Mississippi law) (for their structure, insureds were required to prove that there was direct accidental physical loss to property).  However, as detailed below, the Lopezes have not and cannot prove "accidental

---

[22]<u>See</u> policy, Exhibit "A" to Motion for Summary Judgment on Coverage Issues at Section I - Property Protection, Coverage A - Dwelling, Insuring Agreements, p. 11, ¶ 1.(a).

direct physical loss" to their home.  They have not and cannot establish a prima facie case of coverage.  Therefore, Shelter is entitled to summary judgment.

The policy defines "accidental direct physical loss" to mean "loss of possession of, or actual physical damage to, a part of the covered property which is caused by an 'accident'."[23] In this case, the Lopezes claim loss of possession of their home.  Specifically, they claim that they were forced to move out of their home and into a garage on their property because of the Chinese-manufactured drywall used in the construction of their home.[24]  They also claim actual physical damage to appliances and exposed metals in their home.[25]  The pertinent coverage question, then, is whether the Lopezes have or can prove that the loss of possession of their home and the actual physical damage to the appliances and exposed metals in their home was caused by an "accident."

The Shelter policy  defines "accident" to mean "an action or occurrence, or a series of actions or occurrences, that: (a) started abruptly, (b) during the policy period, and (c) directly resulted in 'bodily injury' or 'property damage'" (underline added).[26]  Significantly, in this case, the Lopezes allege no action or occurrence that "started abruptly."  Rather, they allege that Sturidvant used defective Chinese manufactured drywall in the construction of their home in 2007 and that by 2009 they "began experiencing unexplained noxious odors in the home, adverse

---

[23]See policy, Exhibit "A" to Motion For Summary Judgement on Coverage Issues at Definitions Used Throughout This Policy, pp. 2-3, ¶ 2.

[24]See Complaint (pp. 5-17 of Attachment 1 to Notice of Removal, Court Document No. 1) at ¶ 10.

[25]See Complaint (pp. 5-17 of Attachment 1 to Notice of Removal, Court Document No. 1) at ¶ 9.

[26]See policy, Exhibit "A" to Motion For Summary Judgement on Coverage Issues at Definitions Used Throughout This Policy, p. 2, ¶ 1.

health effects, and damage to appliances and exposed metals in the home."[27]  Clearly, the

Lopezes' allegation of installation of defective drywall in 2007, which resulted in the

manifestation of noxious odors, adverse health effects, and the uninhabitability of their home two

years later in 2009, does not constitute an action or occurrence that "started abruptly."

Tinucci v. Allstate Insurance Company is instructive.  There, the Tinuccis purchased a

homeowners' insurance policy which provided property coverage for "sudden and accidental

direct physical loss."  Tinucci v. Allstate Ins. Co., 487 F. Supp. 2d 1058, 1059 (D. Minn. 2007).

They submitted a claim to their insurer under the policy for water damage they discovered to the

home while preparing to sell it.  Tinucci, 487 F. Supp. 2d 1058, 1059-60.  Allstate denied the

claim, and the Tinuccis sued Allstate for breach of the terms of the insurance contract and of the

duty of good faith and fair dealing.  Tinucci, 487 F. Supp. 2d at 1060.

During the course of litigation, Allstate moved for summary judgment.  Id.   It argued that

the Tinuccis had not and could not establish a prima facie case for coverage under the policy

since the policy only covered sudden and accidental direct physical loss.  Id.  It also argued, in the

alternative, that coverage was excluded by its policy's "latent defect" exclusion, "faulty

materials" exclusion, and "mold" exclusion.  Id.  at 1059-60.

The district court granted Allstate's motion for summary judgment.  Id. at 1063.  In so

doing, the court scrutinized the policy language before it and specifically found  the policy's

phrase "sudden and accidental" to be clear and unambiguous.  Id.  at 1062.  It held that, to be

covered under the policy, "a direct physical loss" must be "abrupt and unexpected."  Id.  It

_____

[27]See Complaint (pp. 5-17 of Attachment 1 to Notice of Removal, Court Document No.
1) at ¶9.

11

concluded that the loss at issue was clearly not "sudden" or "abrupt." Id.  Rather, it was the result of original construction defects in the home which had been present since the home's construction.  Id.  The Court noted that, "[a]lthough unexpected, the water damage in the Tinucci residence was not a sudden loss."  Id.  Accordingly, the Court found that the Tinuccis had failed to establish a prima facie case of coverage under the homeowners policy and that Allstate was entitled to summary judgment.  Id.

A similar result was reached in Harmon v. Safeco Insurance Company of America.  There, an insured sought to recover under a homeowners insurance policy for damage to her opal jewelry.  Harmon v. Safeco Ins. Co., 24 Kan. App. 2d 810, 954 P.2d 7 (1998).  The particular question before the court was whether damage to opals caused by spontaneous "crazing" was an "accidental direct physical loss" under a homeowners insurance policy.  Harmon, 24 Kan. App. 2d. 810, 812, 954 P.2d 7, 9.  Significantly, the policy (unlike the policy before this Court) did not contain a definition for "accidental direct physical loss."  Harmon, 24 Kan. App. 2d at 812, 954 P.2d at 9.  So, the court found the "pivotal word to define" to be "accident" and turned to several sources to determine the "generally accepted" meaning of that term as well as the term "accidental."  Id.  The Court noted that the insured had failed to present any evidence of an outside force that caused the opals to craze.  Id., 24 Kan. App. 2d  at 814, 954 P.2d at 10.  It concluded that, absent some indication that the crazing was caused by an outside force, it had no choice but to assume it was caused by an inherent defect or tendency within the opals and not by some accident.  Id.  Accordingly, the court held that the insured had failed in her burden to prove that the damage to the opals was an "accidental direct physical loss" and affirmed the grant of summary judgment in favor of the homeowner insurer  Id.

The loss subject of the Lopezes' Complaint, like the loss subject of <u>Tinucci</u> and <u>Harmon</u>, was neither sudden nor abrupt.  It was not the result of some outside action, occurrence, or outside force.  Rather, it was caused by an inherent defect or tendency in the drywall just like the loss in <u>Tinucci</u> was caused by original construction defects and just like the loss in <u>Harmon</u> was caused by an inherent defect or tendency within the opals.  Clearly, the Lopezes have failed to establish that the damage they claim was an "accidental direct physical loss."  Accordingly, Shelter is entitled to summary judgment just like the insurers in <u>Tinucci</u> and <u>Harmon</u> were.

**C.  COVERAGE IS EXPLICITLY EXCLUDED.**

As set forth in Section III. B. above, coverage has not been invoked because the Lopezes have failed to establish a prima facie case for coverage.  They have failed to establish their damage was an accidental direct physical loss.  The Court need go no further to determine this coverage question.  However, even if coverage had been invoked by demonstration of an accidental physical loss, such coverage would nevertheless be excluded by two policy exclusions: exclusion 10 and exclusion 19.

Exclusion 10 excludes coverage for loss or damage caused by "latent defect[s]" and "contamination."[28]  Exclusion 19 excludes coverage for loss or damage caused by "any defect, inadequacy, fault, unsoundness or weakness in material used in construction."[29]  A careful reading of the Lopezes' Complaint indicates the Chinese-manufactured drywall which Sturdivant used in

---

[28]<u>See</u> Policy, Exhibit "A" to Motion For Summary Judgement on Coverage Issues at Exclusions Applicable to Coverage A & B, p. 13, ¶ 10.

[29]<u>See</u> Policy, Exhibit "A" to Motion For Summary Judgement on Coverage Issues at Exclusions Applicable to Coverage A & B, p. 14, ¶ 19(a).

the construction of their home was defective.[30]  It indicates the drywall contained a latent defect

and contaminants.[31]

The pertinent allegations in the Lopezes' Complaint are as follows:

‣ ". . . the new home they purchased from Defendant Sturdivant <u>had been
constructed with defective Chinese manufactured drywall</u> that was causing all of
the problems in the home, the unexplained adverse health effects, and causing the
home to be uninhabitable";[32]

‣ ". . . [they] have been required to live in this garage, while still being required to
pay mortgage payments on what they had hoped would be their dream home, but
which has been unreasonably dangerous, noxious, and uninhabitable <u>since the
purchase of the home</u>";[33]

‣ ". . . the Defendant Sturdivant is aware of <u>the defective nature of the Chinese-
manufactured drywall that he used in the construction of [their] home</u> . . .";[34]

‣ ". . . the Defendant Sturdivant, despite his knowledge of <u>the defective nature of the
Chinese-manufactured drywall,</u> . . . knowingly <u>used the defective product in the
construction of their home</u> . . .";[35]

‣ ". . . Defendant Sturdivant knew our should have known that <u>the drywall used in
constructing the home was defective, did not function as intended and/or created a
high risk of unreasonable, dangerous side effects, including, but not limited to,</u>

---

[30]<u>See</u> Complaint (pp. 5-17 of attachment 1 to Notice of Removal, Court Document No. 1)
at ¶¶ 9, 10, 19, 23, 33.

[31]<u>See</u> Complaint (pp. 5-17 of attachment 1 to Notice of Removal, Court Document No. 1)
at ¶¶ 9, 10, 19, 23, 33.

[32]<u>See</u> Complaint (pp. 5-17 of Attachment 1 to Notice of Removal, Court Document No.
1) at ¶ 9.

[33]<u>See</u> Complaint (pp. 5-17 of Attachment 1 to Notice of Removal, Court Document No.
1) at ¶ 10.

[34]<u>See</u> Complaint (pp. 5-17 of Attachment 1 to Notice of Removal, Court Document No.
1) at ¶19.

[35]<u>See</u> Complaint (pp. 5-17 of Attachment 1 to Notice of Removal, Court Document No.
1) at ¶19.

> adverse health conditions, corrosion to HVAC coils and refrigerator units, household appliances, wires, tubes and pipes, thereby rendering the home uninhabitable";[36] and

▸ "The construction and sale of the home to the Plaintiffs containing defective Chinese-manufactured drywall constitutes a breach of express and implied warranties of habitability and other warranties.[37]

As evidenced by the Lopezes' own pleading, the drywall contained a latent defect and contaminants which caused the damages about which they complain. The material (i.e., Chinese-manufactured drywall) used for construction was defective, inadequate, faulty, unsound and weak. The Lopezes' alleged damages would not have occurred in the absence of the defective drywall. Therefore, both policy exclusion 10 and policy exclusion 19(a) apply to bar coverage for all of the Lopezes' claims.

Shelter respectfully calls this Court's attention to a decision reached by the United States District Court for the Eastern District of Virginia less than five months ago - - Travco Insurance Company v.. Ward, 2010 WL 2222255 (E. D. Va. June 3, 2010) (copy attached to this brief and incorporated by reference as Exhibit "A"). It is right on point and factually analogous to the case presently before this Court. Travco, like this case, involved a home constructed in 2007 with Chinese drywall. Travco, 2010 WL 2222255, p. 3. The Chinese drywall there, like the Chinese drywall here, released sulfuric gas into the home over time. Travco at p. 3. The insured there, like the insureds here, filed suit, alleging that the drywall was defective. Id. He, like the insureds here, alleged that the defective drywall omitted noxious odors and caused damage and corrosion.

---

[36]See Complaint (pp. 5-17 of Attachment 1 to Notice of Removal, Court Document No. 1) at ¶23.

[37]See Complaint (pp. 5-17 of Attachment 1 to Notice of Removal, Court Document No. 1) at ¶ 33.

Id.  And he, like the insureds here, submitted a claim to his homeowners' insurer, seeking coverage for damages related to the Chinese drywall  Id. at 4.

In Travco, the insurer filed a declaratory judgment action.  Id.  It asked the court to declare that it had no obligation to provide coverage for the losses claimed by its insured.  Id.

The policy before the Travco court, like the policy before this court, contained exclusions which excluded coverage for a loss caused by a latent defect, faulty materials, and contaminants.  Id. at 5.  The insurer moved for summary judgment on the bases of its exclusions.  Id.  Tellingly, the court found that all three exclusions applied to bar coverage for the damages claimed by the insured.  Id. at 12, 13, and 15-18.

With regard to the latent defect exclusion, the court noted that the defect in the Chinese drywall was undetectable and, hence, unexpected.  Id. at 12 (citing Glens Falls Ins. Co. v. Long, 195 Va. 117, 77 S. E. 2d 457, 459 (1953)).  It was a defect which reasonably careful inspection would not have revealed.  Id. (citing Glens Falls Ins. Co., 195 Va. 117, 77 S. E. 2d 457, 459)).  Thus, the court concluded that the latent defect exclusion applied to bar coverage.  Id.

The court also examined the faulty materials exclusion.  Id.  That exclusion, like the faulty materials exclusion before this Court, excluded coverage for faulty, inadequate or defective materials used in construction.  Id.  The court first noted that the insured himself (like the insureds here) repeatedly described the drywall as defective.  Id. at 13.  It then applied the ordinary meaning of the words "faulty" and "defective," found the Chinese drywall to have been "faulty" or "defective," and held the exclusion applied to bar coverage.  Id.

Finally, the court examined a pollution exclusion which excluded coverage caused by contaminants.  Id. at 15.  In so doing, it noted that, although the drywall itself was not a pollutant,

the gases it released were clearly contaminants.  Id. at 18.  It noted that "the Chinese Drywall in [the insured's] home has 'off-gassed,' dispersing and discharging sulfuric gases into the [insured] residence" and held the exclusion, like the latent defect exclusion and the faulty materials exclusion, applied to bar coverage.  Id.

Shelter was unable to locate any reported cases from the Mississippi Supreme Court or the Mississippi Court of Appeals addressing latent defect exclusions or faulty materials exclusions. The United States District Court for the Southern District of Mississippi, however, was called upon to apply Mississippi law to a faulty materials exclusion in Rhoden v. State Farm Fire and Casualty Co..  The policy in that case contained a faulty materials exclusion similar to the one before this Court.  It provided:

> We do not insure under any coverage for any loss consisting of one or more of the items below. Further, we do not insure for loss described in paragraphs 1. and 2. immediately above regardless of whether one or more of the following: (a) directly or indirectly cause, contribute to or aggravate the loss; or (b) occur before, at the same time, or after the loss of any other cause of the loss:
>
> * * * * * *
>
> b. defect, weakness, inadequacy, fault of unsoundness in:
>
> (1) planning, zoning, development, surveying siting;
> (2) design, specifications, workmanship, construction, grading, compaction;
> (3) materials used in construction or repair; or
> (4) maintenance;
>
> of any property (including land, structures, or improvements of any kind) whether on or off the residence premises.
>
> However, we do insure for any resulting loss from items a. and b. unless the resulting loss is itself a Loss Not Insured by this Section.

Rhoden v. State Farm Fire and Cas. Co., 32 F. Supp. 2d 907, 913 (S. D. Miss. 1998).  The court held the faulty materials exclusion applied to exclude coverage for damages to the insureds' home

17

from defective construction that led to cracking and sinking.  <u>Rhoden</u>, 32 F. Supp. 2d 907, 914.

As with the latent defect exclusion and the faulty material exclusion, there are no reported cases from the Mississippi Supreme Court or the Mississippi Court of Appeals  addressing pollution or contamination exclusions under Section I property coverages in insurance policies. However, courts applying Mississippi law have been called upon to interpret pollution or contamination exclusions under Section II liability coverages in insurance policies.  For example, the Fifth Circuit Court of Appeals was called upon to examine such an exclusion under Mississippi law in the case of <u>American States Insurance Co. v. Nethery</u>.  There, the Fifth Circuit held that a pollution exclusion precluded coverage for a claim by an insured's customer that the insured's use of standard paint and glue to paint the interior of her home and to replace wood floors inflamed her hypersensitivity to chemicals.  <u>American States Ins. Co. v. Nethery</u>, 79 F.3d 473, 475-78 (5th Cir. 1996) (applying Mississippi law).  It noted that the exclusion's definition of "pollutant" covered any irritant or contaminant, including vapor, fumes and chemicals, so that the exclusion applied even though paint and glue fumes might not normally inflict injury.  <u>American States Ins. Co.</u>, 79 F.3d 473, 475-78.

Similarly, the United States District Court for the Southern District of Mississippi was called upon to assess a Section II liability pollution exclusion under Mississippi law in the case of <u>Acceptance Insurance Co. v. Powe Timber Co.</u>.  In that case, the Court concluded that losses claimed by consumers regarding allegedly toxic wood chips fell under pollution exclusions within the timber company's liability policies.  <u>Acceptance Ins. Co. v. Powe Timber Co.</u>, 403 F. Supp. 2d 552, 559 (S. D. Miss. 2005).   In so doing, it reasoned that the injuries asserted by the consumers were caused by "release" or "escape" of wood chips from the timber company's

property.  Acceptance Ins. Co., 403 F. Supp. 2d 552, 559.  See also American States Ins. Co. v. F.

H. S., Inc., 843 F. Supp. 187, 190 (S. D. Miss. 1994) (pollution exclusion unambiguously

excluded coverage for personal injury claims arising from ammonia leak from pressure relief

valve on insured's refrigeration system at warehouse; ammonia was excluded "pollutant" within

meaning of policy which defined pollutants to include any gaseous "irritant or contaminant,

including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste").

## V.  CONCLUSION.

As demonstrated in Shelter's Motion for Summary Judgment, the evidence relied upon in

support of its Motion for Summary Judgment, and this supporting memorandum brief, there is

simply no coverage for the losses the Lopezes claim as a result of the defective Chinese drywall

which Sturdivant used in the construction of their home.  First and foremost, Shelter's policy only

affords coverage for "accidental direct physical loss."  However, in this case the Lopezes have

failed to establish a prima facie case of coverage. They have failed to establish an "accidental

direct physical loss."  Rather, the evidence is that the loss they experienced was not from an

action or occurrence that started abruptly.  Rather, it was from original construction defects which

caused damages over time.

Moreover and significantly, even if the Lopezes had established a prima facie case for

coverage, such coverage would nevertheless be excluded by the policy's exclusions for latent

defects, contamination, and faulty materials.  The Lopezes themselves allege that the Chinese-

manufactured drywall which Sturdivant used in the construction of their home was defective.

The Lopezes themselves also allege that the drywall contained a latent defect and contaminants.

Accordingly, the policy's exclusions for latent defects, contamination, and faulty materials apply

to exclude coverage for the Lopezes' losses.

Since the policy clearly affords no coverage for the Lopezes' losses, Shelter is entitled to summary judgment in its favor.  More specifically, it is entitled to a declaration that the homeowners 'policy issued to the Lopezes affords no coverage for the Lopezes' losses.

WHEREFORE, PREMISES CONSIDERED, Shelter respectfully submits that its Motion for Summary Judgment on Coverage Issues is well-taken and should be granted.

This 5th day of November, 2010.

**SHELTER MUTUAL INSURANCE COMPANY**

By:    s/  R. Bradley Best
R. BRADLEY BEST, MSB # 10059

**OF COUNSEL:**

HOLCOMB DUNBAR
*A Professional Association*
400 South Lamar, Suite A
Post Office Drawer 707
Oxford, Mississippi 38655
Tel. (662) 234-8775

V. K. Smith, III, Esq.
BRYAN NELSON
Post Office Box 18109
Hattiesburg, Mississippi 39404-8109

**CERTIFICATE OF SERVICE**

I hereby certify that on November 5th, 2010, I caused the foregoing to be electronically filed with the Clerk of the Court using the ECF system which sent notification of such filing via

electronic mail to the following counsel of record:

**ATTORNEYS FOR PLAINTIFFS:**
Carroll H. Ingram, Esq.
Jennifer Ingram Wilkinson, Esq.
John F. Hawkins, Esq.
John Corlew, Esq.


  /s/ R. BRADLEY BEST
_____